## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JASON MICHAEL POTTS, | ) | CASE NO. 5:24-CV-00882-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Plaintiff, Jason Michael Potts ("Potts" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On May 16, 2023, Potts filed an application for DIB, alleging a disability onset date of June 1, 2016 and that he was disabled due to an anxiety disorder, sleep impairment, depression, post-traumatic stress disorder, difficulty adapting to work life settings, stressful circumstances, and maintaining social relationships, disturbances in motivation and mood, short and long term memory issues, panic attack disorder, neglect of personal appearance and hygiene, obsessive compulsive behavior, attention span issues, suicidal ideation, paranoia, total occupational and

social impairment, irritability with periods of violence, hypertension, dermatitis, left knee problem, arthritis, and arthritis in shoulder. (ECF No. 6, PageID #: 102, 200–06). The application was denied initially and upon reconsideration, and Potts requested a hearing before an administrative law judge ("ALJ").  (ECF No. 6, PageID #: 114, 126, 133). On December 14, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No.  6, PageID #: 42).  On, February 7, 2024, the ALJ issued a written decision finding Potts was not disabled. (ECF No. 6, PageID #:39–67). The ALJ's decision became final on April 15, 2024, when the Appeals Council declined further review. (ECF No.  6, PageID #: 26).

On May 17, 2024, Potts filed his Complaint to challenge the Commissioner's final decision.  (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 7, 9, and 10). Potts asserts the following assignments of error:

> (1) The RFC determination is not supported by substantial evidence, and the ALJ committed legal error by failing to properly evaluate and explain her analysis of the opinions of State agency physicians Elizabeth Das, M.D., and Abraham Mikalov, M.D., as required by 20 C.F.R. § 404.1520c.
>
> (2) The ALJ's RFC finding is unsupported by substantial evidence, and she committed legal error by failing to properly evaluate and explain her analysis of the opinion of treating physician, David E. Stanley, M.D., as required by 20 C.F.R. § 404.1520c.

(ECF No. 7, PageID #: 862).

## III. Background

### A.  Relevant Hearing Testimony

During the hearing, Potts testified that he was 44 years old and not presently working. (ECF No. 6, PageID #: 72, 74). He lives with his wife and three cats. (*Id*. at PageID #: 73). Potts is able to drive and was most recently employed as a photographer. (*Id.*). Potts testified that he is

unable to work because he has "way too much anxiety." (*Id*. at PageID #: 84). Potts stated that he

feels depressed, has alternating period of feeling drained and then hyper-focused, has mood

swings, experiences feelings of guilt and/or worthlessness. (*Id.* at PageID #: 89–93).

> The ALJ summarized the Potts's written statements and hearing testimony as follows:
>
> Written statements offered in support of the claimant's application allege disability since June 2016 because of above-discussed physical health conditions of arthritis in the left knee and in a shoulder as well as hypertension and dermatitis not established as impairments until after the December 2020 date last insured, but primarily because of a host of alleged mental health diagnoses—anxiety disorder, PTSD, "panic attack disorder" and depression—along with associated sleep impairment, disturbances in motivation and mood, short- and long-term memory issues, neglect of personal appearance and hygiene, obsessive compulsive behavior, attention span issues, suicidal ideation, paranoia, and irritability with periods of violence (Ex. 2E/2).  Mr. Potts alleged that such mental health symptoms cause difficulty in adapting to work and to stressful circumstances and in maintaining social relationships, and that they cause "total occupational and social impairment" (Ex. 2E/2).
>
> At the December 2023 hearing in this matter, the claimant testified that he has remained unable to work since the alleged onset date because of ongoing difficulty dealing with, speaking to, and even being around other people relating to high anxiety.  Mr. Potts asserted that he was shaking while talking over the phone to the undersigned, that he does not go outside his home and, when he does, it is typically late at night for any in-store shopping trips and at all times accompanied by his wife, who also engages in conversations with others (e.g., if going out to eat, she verbalizes his order to the server).  He also testified that the alleged onset of disability followed an act of physical anger at his job, in which he broke a desk, and was then placed on administrative leave by his employer; and that he had difficulty getting angry with coworkers over the phone.  He further testified that he experiences at times weeklong depressive episodes in which he does little but sleep, but most of the time is anxious, restless, having mood swings to anger quickly, fluctuating energy level, feeling guilt, difficulty concentrating and finishing tasks, and suicidal ideations.

(ECF No. 6, PageID #: 51–2).

## B. Relevant Medical Evidence

Potts alleged disability due to a variety of impairments, both mental and physical (*id*. at

PageID #: 236, Ex. 2E/2), but the issues in this appeal concern solely his alleged physical

impairment and, specifically, his left knee. (*See* ECF No. 7). The ALJ summarized Potts's health

records and symptoms relevant to his left knee degenerative disk disease:

> For the unilateral/left knee DJD, the medical evidence contains historically relevant reviews of 2009 MRI of the left knee revealing a torn ACL and a partially torn posterior ligament (PCL), a June 2022 surgery to repair these ligament injuries, and reports of residual knee pain that is reasonably attributable to degenerative changes shown on August 2016 x-rays (*see* Ex. 1F/496-497,383). However, such laboratory imaging study showed expressly "mild" degree of DJD (Ex. 1F/427-428), and the claimant showed 5/5 bilateral leg strength or intrinsic knee muscle strength on numerous physicians' examinations over 2016-2017, the left knee had negative objective signs of instability or crepitus, he was observed to ambulate with normal gait in casual, tandem, and heel and toe walking respects, and he reported "rare" to occasional ("every once in a while") need to self-manage the pain by taking over-the-counter ibuprofen or similar remedy (*see, e.g.*, Ex. 1F/384,470,334,278,232,490-493,151; *and see* Ex. 1F/383,468,277,231).
>
> Medical intervention for the left knee pain has consisted of a singular beneficial corticosteroid injection administered in November 2016 (Ex. 1F/316), a briefly attended and yet substantially beneficial course of formal physical therapy from April 26, 2017 through June 14, 2017, with 40-50% improvement reported in functioning and in strength of the leg (Ex. 1F/453-455,261-264,251,246,235-236; and see Ex. 1F/231), and a TENS unit that was dispensed in May 2017 (Ex. 1F/243). Although the claimant endorsed moderate (5-6/10) left knee pain at an August 2017 "Compensation & Pension (C&P) Examination" at the Department of Veterans Affairs (DVA), he flexed the knee to 135 degrees and symmetrically with the unaffected right knee, pain on such flexion did not contribute to any loss of function, no pain was endorsed with weightbearing (standing and walking, i.e.), it moved without crepitus and without instability shown on ligament testing, and the knee had expressly normal 5/5 strength (Ex. 1F/489,490-493).

(ECF No. 6, PageID #: 46).

### C. Opinion Evidence at Issue

#### 1. State agency physicians Elizabeth Das, M.D. and Abraham Mikalov, M.D.

State agency physician Elizabeth Das, M.D. reviewed Potts's medical records and

provided her opinion as to his physical limitations on May 22, 2023. (ECF No. 6, PageID #:

105–06, Tr. at Ex. 2A). Dr. Das opined that Potts could occasionally lift and/or carry twenty

pounds and frequently lift and/or carry ten pounds; could stand and/or walk for six hours in an

eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps/stairs, kneel, and crawl; and never climb ladders/ropes/scaffolds. (*Id*.). Dr. Das stated these limitations were caused by  degenerative changes of Potts's left knee. (*Id*. at PageID #: 105).

On June 28, 2023, State agency reviewing physician Abraham Mikalov, M.D. reviewed Potts's medical records on reconsideration. (*Id.* at PageID #: 111–12, Tr. at 4A). No changes or updated information was reported from that of Dr. Das's opinion. (*Id.* at PageID #: 112). Dr. Mikalov's opinion was consistent with Dr. Das's opinion. (*Id*.).

### 2.  Treating physician David E. Stanley, M.D.

On August 21, 2017, Dr. David E. Stanley conducted a Department of Veteran's Affairs compensation and pension exam ("C&P exam") for the claimant's left knee impairment. (*See* ECF No. 6, PageID #: 777–87, Tr. at 1F/489–99). In his conclusion, Dr. Stanley stated that Potts's left knee condition would result in Potts having "difficulty performing work involving prolonged walking/standing [but] he is able to do sedentary work" (Id. at PageID #: 786, Tr. at 1F/498).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. Through the date last insured, the claimant had the following severe impairments: posttraumatic stress disorder (PTSD) and persistent depressive disorder (20 CFR 404.1520(c)).

(ECF No. 6, PageID #: 45).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He could perform simple, routine, and repetitive tasks but not at a production-rate pace; he could have occasional interactions with

5

supervisors and with coworkers, but could never interact with the public; and he could tolerate few changes in a routine work setting.

(*Id.* at PageID #: 51).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(*Id.* at PageID #: 61).

Significantly, the ALJ found no severe physical impairments. (ECF No. 6, PageID #: 45). The ALJ stated that Potts's "degenerative joint disease (DJD) of the left knee, 'status post' (s/p) remote anterior cruciate ligament (ACL) surgical repair (Ex. 1F/183,427-428,496)" "[does] not meet the definition of a 'severe' medically determinable impairment under the regulations because [it] caused no more than minimal limitation in the claimant's ability to do basic physical or other work activities[.]" (*Id.* (citing 20 CFR 404.1522)). The ALJ explained that the "largely unremarkable objective medical evidence including mild degree of visible DJD of the knee per x-rays, conservative and limited treatment for the pain, and normal gait by clinicians' observations are not consistent with a musculoskeletal disorder that had caused more than minimal limitation in the claimant's abilities to do basic physical work activities, including standing and walking as well as any of the postural body movements (climbing, kneeling, crouching, etc.), or any other work activities." (*Id.* at PageID #: 46).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).

6

"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Potts raises two issues on appeal, both of which pertain to the ALJ's evaluation and explanation of the expert medical opinions as required by 20 C.F.R. § 404.1520c. Specifically, Potts states that the ALJ committed a legal error by failing to properly evaluate and explain their analysis of the opinions of State agency physicians Elizabeth Das, M.D. and Abraham Mikalov, M.D, and treating physician David E. Stanley, M.D. Accordingly, the Court will address both issues together.

As Potts's claim was filed after March 27, 2017, the new regulations for evaluating medical opinion evidence under 20 C.F.R. § 404.1520c apply in this case. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [they] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ evaluates medical source opinions using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical

opinions ...."). The ALJ is required to explain how they considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). "Courts have frequently held the ALJ is not required to use the word "supportability" or "consistency" in order to properly make findings as to those factors." *Guthrie v. Comm'r of Soc. Sec.*, No. 3:22 CV 1309, 2024 WL 1466867, at *2 (N.D. Ohio Apr. 4, 2024) (citing *Lawrence v. Comm'r of Soc. Sec.*, 2023 WL 2246704, at *20 (N.D. Ohio) ("Although the ALJ did not use the term supportability or consistency in the above evaluation, the ALJ made findings relative to the opinion related to supportability and consistency."), *report and recommendation adopted*, 2023 WL 2242796; *Tyrone H. v. Comm'r of Soc. Sec.*, 2023 WL 2623571, at *8 (S.D. Ohio) ("though Plaintiff characterizes the ALJ's discussion of the opinions as addressing only consistency, the ALJ addressed particular pieces of medical evidence upon which the state agency psychologists based their findings – the cornerstone of supportability"); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 455 (6th Cir. 2016) ("reversal was not warranted [where] the ALJ's conclusion was sufficiently supported by factual findings elsewhere in the decision that need not be repeated"); *see also Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (an agency need not "follow a particular formula or incant 'magic words' " in order for its decision to be upheld by a reviewing court).).With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [they] considered the supportability and

consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. §
404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain"
how they considered the relationship, specialization, and other factors set forth in paragraphs
(c)(3) through (c)(5) of the regulation. *Id.*

### 1. State agency physicians Elizabeth Das, M.D. and Abraham Mikalov, M.D.

State agency physician Elizabeth Das, M.D. reviewed Potts's medical records and
provided her opinion as to his physical limitations on May 22, 2023. (ECF No. 6, PageID #:
105–06, Tr. at Ex. 2A). Dr. Das opined that Potts could occasionally lift and/or carry twenty
pounds and frequently lift and/or carry ten pounds; could stand and/or walk for six hours in an
eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb
ramps/stairs, kneel, and crawl; and never climb ladders/ropes/scaffolds. (*Id.*). Dr. Das stated
these limitations were caused by  degenerative changes of Potts's left knee. (*Id.* at PageID #:
105).

On June 28, 2023, State agency reviewing physician Abraham Mikalov, M.D. reviewed
Potts's medical records on reconsideration. (*Id.* at PageID #: 111–12, Tr. at 4A). No changes or
updated information was reported from that of Dr. Das's opinion. (*Id.* at PageID #: 112). Dr.
Mikalov's opinion was consistent with Dr. Das's opinion. (*Id.*).

The ALJ found the opinions of Dr. Das and Dr. Mikalov not persuasive and explained:

> while not inconsistent per se with the expanded record (due to there being no new
> medical evidence pertaining to the period through December 2020 at the hearing
> stage of this claim, they are not well supported by the largely unremarkable
> objective medical evidence over the 2016-2020 period at issue, including the
> expressly "mild" degree of left knee DJD shown on August 2016 x-rays, normal
> gait and no pain in the knee on weightbearing by clinical observation, full 5/5
> knee and overall leg muscle strength, no signs of instability or crepitus at the
> knee, and symmetric range of motion to the unaffected right knee.  Further, the
> severity finding and assignment of exertional and postural limitations are not well
> supported by the limited and altogether conservative treatment pursued by the

claimant for left knee pain, which has been a single beneficial corticosteroid injection, a brief and 40-50% improving course of physical therapy, a TENS unit, and over-the-counter ibuprofen combined with prescription-strength anti-inflammatory medication given on the basis of other pain (neck/cervical).  In sum, the State agency MCs' findings for severe left knee impairment through the date last insured are not persuasive because they exceed supportability from the period-relevant medical evidence, which does not support more than minimal functional limitation(s) from this or any other physical impairment.

(ECF No. 6, PageID #: 58).

Potts argues that the RFC determination is not supported by substantial evidence because the ALJ failed to properly explain their analysis of the State agency opinions. (ECF No. 7, PageID #: 870 (The ALJ's "rationale fails to properly address either the factor of supportability or the factor of consistency as required in 20 C.F.R. § 404.1520c(b)(2).")). *Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *3 (6th Cir. May 20, 2024) (An RFC determination lacks substantial evidence "if the ALJ 'fails to follow agency rules and regulations[.]' ") (quoting *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)). Potts argues that the ALJ "played doctor" by substituting their own opinion for the State agency doctors without providing adequate explanation. (*Id*. at PageID #: 870). Potts further argues that:

A proper supportability analysis would have recognized that Dr. Das noted post-surgical left knee pain, with x-ray evidence of degenerative changes and MRI results showing a tear of left knee ACL and a partial tear of the PCL. T 78. The ALJ erred by failing to note that Dr. Das and Dr. Mikalov based their well-supported concurring opinions on treatment notes which contained both x-ray and MRI results which supported their restrictions to less than a full range of light work. T. 33, 78, 87. A proper consistency analysis would have, not only recognized that the physical assessments by Dr. Das and Dr. Mikalov were consistent with each other, but also that their opinions—that the residuals following knee surgery significantly affected Plaintiff's ability to work—were consistent with the assessment by Dr. Stanley that Plaintiff would have "difficulty performing work involving prolonged walking/standing."

(*Id*. at PageID #: 871).

The Commissioner argues that the ALJ's determination was backed by substantial evidence and that the ALJ was not required to adopt any medical opinion or prior administrative

medical finding to satisfy their obligation to consider the medical and non-medical evidence in assessing an RFC supported by the record. (ECF No. 9, PageID #: 886–87). Additionally, the Commissioner argues that the ALJ properly explained their supportability and consistency analysis. (*Id*. at PageID #: 887–88).

Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The supportability analysis examines "the extent to which 'the objective medical evidence and supporting explanations presented by a medical source ... support his ... medical opinion(s).' " *Sallaz v. Comm'r of Soc. Sec.*, No. 4:22-CV-01239, 2023 WL 5043702, at *10 (N.D. Ohio June 26, 2023) (omissions in original) (quoting 20 C.F.R. § 404.1520c(c)(1)), report and recommendation adopted, 2023 WL 5266613 (N.D. Ohio Aug. 16, 2023). The consistency analysis looks at how consistent a medical opinion is with evidence from other sources. 20 C.F.R. § 404.1520c(c)(2). "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

The "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)). Potts argues that the ALJ failed to consider that the State agency physicians supported their opinions with the MRI of

Potts's left knee showing a tear of his ACL and partial tear of his PCL and x-ray evidence of degenerative changes in his knee. (ECF No. 7 at PageID #: 871 ("The ALJ erred by failing to note that Dr. Das and Dr. Mikalov based their well-supported concurring opinions on treatment notes which contained both x-ray and MRI results which supported their restrictions to less than a full range of light work.")).

The record shows that the State agency physicians supported their opinions by citing to the degenerative changes in Potts's left knee that were observed in August 2016.[1] (ECF No. 6, PageID #: 105; 112). The ALJ, however, stated that the August 2016 x-ray did not support the State agency physicians' opined limitation as the x-ray showed an "expressly 'mild' degree of left knee DJD." (*Id*. at PageID #: 58). Moreover, the ALJ noted that the State agency physicians "reviewed the initially available medical and other documentation that is now part of the administrative evidentiary record" and that "no new evidence" had been submitted in support of the claim. (*Id*. at PageID #: 57–8). The ALJ then stated that the opinions were not well-supported because the objective medical evidence was "largely unremarkable", including the August 2016 x-rays, "normal gait and no pain in the knee on weightbearing by clinical observation, full 5/5 knee and overall leg muscle strength, no signs of instability or crepitus at the knee, and symmetric range of motion to the unaffected right knee." (*Id*. at PageID #: 58). Thus, the ALJ articulated how they considered the supportability factor for the State agency physicians' opinions.

With respect to the MRI, the record demonstrates that the State agency physicians

_____

[1] When asked to "[e]xplain postural limitations and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusions are based", the physicians stated "08/27/2016: degenerative changes L knee. unremarkable spine." (ECF No. 6, PageID #: 105; 112).

reviewed the 2009 MRI in their evaluation.[2] (ECF No. 6, PageID #: 103, 110). The ALJ's

analysis of these opinions, however, does not specifically address the 2009 MRI. (*See* ECF No.

6, PageID #: 58). However, the State agency physicians did not cite to the MRI as support for

their opined limitations (*id.* at PageID # 105, 112). Moreover, an ALJ is not required to cite to

every piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir.

2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))

("While it might be helpful for an ALJ to articulate his reasons for crediting or discrediting each

... opinion, it is well settled that 'an ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.' "); *Simons v.

Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("[A]n ALJ is not required to discuss all the

evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was

not considered.") (citation omitted).

Nevertheless, a review of the decision as a whole demonstrates that the ALJ properly

considered the 2009 MRI in their analysis. *Cormany v. Kijakazi*, No. 5:21CV933, 2022 WL

4115232, at *5 (N.D. Ohio Sept. 9, 2022) (This Court looks to the decision as a whole when

considering whether the ALJ properly considered both the supportability and consistency of an

expert opinion.). Elsewhere in the decision, the ALJ found the 2009 MRI and the 2010 (or 2011)

reparative surgery "historically relevant" to Potts's residual knee pain and the August 2016 x-

rays and considered this evidence in their assessment of the severity of impairment caused by

---

[2] The Court notes that in listing the evidence reviewed by the State agency physicians, the listing dates Potts's MRI as having taken place in August 2017. (ECF No. 6, PageID #: 103, 110). However, there is only evidence of an MRI of Potts's left knee on June 11, 2009, prior to his reparative surgery. (*See* ECF No. 6, PageID #: 785–86). The August 2017 record referenced corresponds with Dr. Stanley's examination of Potts during which the 2009 MRI is referenced. (*Id.* at PageID #: 777–87).

Potts's left knee DJD.[3] (*Id.* at PageID #: 45). The ALJ then explained that post-surgery, the most recent imaging study (in 2016) showed "expressly 'mild' degree of DJD", no loss of bilateral leg strength or intrinsic knee muscle strength on numerous physicians' examinations over 2016-2017, "the left knee had negative objective signs of instability or crepitus, he was observed to ambulate with normal gait in casual, tandem, and heel and toe walking respects, and he reported 'rare' to occasional ('every once in a while') need to self-manage the pain by taking over-the-counter ibuprofen or similar remedy." (*Id.* at PageID #: 46 (citing Ex. 1F/384,470,334,278,232,490-493,151; Ex. 1F/383,468,277,231)). The ALJ stated that the "largely unremarkable objective medical evidence including mild degree of visible DJD of the knee per x-rays, conservative and limited treatment for the pain, and normal gait by clinicians' observations are not consistent with a musculoskeletal disorder that had caused more than minimal limitation in the claimant's abilities to do basic physical work activities, including standing and walking as well as any of the postural body movements (climbing, kneeling, crouching, etc.), or any other work activities." (*Id.*). The record demonstrates that the ALJ properly considered the 2009 MRI and recognized that since the date of the MRI, Potts had undergone reparative surgery and, thereafter, had largely unremarkable objective medical evidence.

Accordingly, the ALJ properly explained why they found that the State agency physicians' opinions were not supported by the objective medical evidence.

---

[3] The MRI Potts references occurred in June 2009 (ECF No. 6, PageID #: 483; Ex. 1F/195), *prior to* his surgical repair in 2010 and prior to his alleged disability onset date of June 2016. The ALJ's "consideration of the medical and other evidence in the written record and all subsequent Findings of Fact and Conclusions of Law [was constrained] to the period from June 1, 2016, the alleged onset date, through December 31, 2020." (*Id.* at PageID #: 45). The 2009 MRI did not occur during the relevant period at issue. However, the ALJ considered it as "historically relevant" to his left knee DJD.

"'[C]onsistency' involves comparing a medical opinion or prior administrative medical finding with the evidence from other medical sources and nonmedical sources in the claim." *Cindy F. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-CV-00047, 2022 WL 4355000, at *7 n.5 (S.D. Ohio Sept. 20, 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (emphasis added). The ALJ stated that the State agency physicians' opinions "[were] not well supported by the largely unremarkable objective medical evidence over the 2016-2020 period at issue[.]" (ECF No. 6, PageID #: 58).[4] Specifically, the ALJ noted that August 2016 x-rays showed "mild" degree of left knee DJD, normal gait, no pain in the knee on weightbearing, full 5/5 knee and overall leg muscle strength, no signs of instability or crepitus at the knee, and symmetric range of motion to the unaffected right knee. (*Id.*). Further, the ALJ discussed Potts's conservative treatment of his knee pain, including brief physical therapy, a TENS unit, ibuprofen, inflammatory pain medication (prescribed on the basis of neck/cervical pain) and a single beneficial corticosteroid injection. (*Id.*). Accordingly, the ALJ adequately explained their conclusion that the opinions were not consistent with the record evidence.

Potts argues that the ALJ failed to explain that the opinions were consistent with each other and with the assessment by his treating physician, Dr. Stanley. (ECF No. 7, PageID #:

---

[4] Although the ALJ stated that that the opinions were not "well-supported" by the evidence in the record, it is clear that the ALJ was performing their consistency analysis as they referenced the totality of the record evidence. *See Ford v. Comm'r of Soc. Sec. Admin.,* No. 1:22-CV-00524-BYP, 2023 WL 2088157, at *18 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted,* No. 1:22CV524, 2023 WL 2080159 (N.D. Ohio Feb. 17, 2023) ("an ALJ 'need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors,' and a reviewing court is able to follow the ALJ's reasoning."); 20 C.F.R. § 404.1520c(b)(2) (stating we "will explain how we considered the supportability and consistency factors").

871). The ALJ explained that the "shared" State agency physicians' opinions "were not inconsistent *per se* with the expanded record[.]" (ECF No. 6, PageID #: 58). By stating that the opinions were "shared", the ALJ directly acknowledged that the opinions were consistent with each other. Additionally, the ALJ directly acknowledged that the opinions were not inconsistent with the "expanded medical record", which includes the opinion from Dr. Stanley. *See* 20 C.F.R. § 404.1520b (explaining that "medical opinions" are part of the record of evidence considered in making a disability determination). Thus, Potts's argument has no merit.

The ALJ's articulation meets the requirements of 20 C.F.R. § 404.1520c. Although the ALJ appears to conflate the terms "supportability" and "consistency", this Court is able to follow the ALJ's reasoning and is satisfied that the ALJ properly performed the requisite analysis of the "supportability" and "consistency" factors. "An ALJ 'need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors,' and a reviewing court is able to follow the ALJ's reasoning." *Chyenne M. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1475, 2024 WL 3466154, at *6 (S.D. Ohio July 18, 2024) (quoting *Ford v. Comm'r of Soc. Sec. Admin.*, No. 1:22-cv-00524, 2023 WL 2088157, at *18 (N.D. Ohio Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 2080159 (N.D. Ohio Feb. 17, 2023)) (additional citations omitted). As detailed above, the ALJ thoroughly discussed Potts's medical records in their decision such that the Court may meaningfully review the ALJ's consistency finding. Although the ALJ stated that the opinions were not "inconsistent *per se* with the expanded record," the ALJ thereafter explained that Potts's conservative ongoing treatment, largely unremarkable diagnostic imaging, and the objective medical evidence stood in contrast to the State agency physicians' opined limitations. The ALJ also properly explained their finding that the opinions were not well-supported because the explanation of "degenerative changes

17

[left] knee" did not support the greater limitations because the 2016 diagnostic evidence showed that the changes were expressly "mild."

Here, the ALJ properly articulated their supportability and consistency analysis as required in 20 C.F.R. § 404.1520c. Potts's argument to the contrary is merely "a veiled attempt to have [this Court] reweigh the evidence." *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022). However, it is not this Court's role to reweigh the evidence presented to the ALJ or second guess their decision. *See, e.g., Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 414 (6th Cir. 2011) (noting that the court "reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). Accordingly, Potts's first issue does not warrant remand. [5]

### 2.  Treating physician David E. Stanley, M.D.

On August 21, 2017, Dr. David E. Stanley conducted a Department of Veteran's Affairs

-------

[5] Potts's heading for his first issue is: "The RFC determination is not supported by substantial evidence, and the ALJ committed legal error by failing to properly evaluate and explain her analysis of the opinions of State agency physicians Elizabeth Das, M.D., and Abraham Mikalov, M.D., as required by 20 C.F.R. § 404.1520c." (ECF No. 7, PageID #: 868). Although the heading addresses both that the RFC determination was not supported by substantial evidence *and* that it was not made pursuant to proper legal standards, the entirety of Potts's analysis attacks only the ALJ's compliance with legal standards. (*See* ECF No. 7, PageID #: 870–2 and ECF No. 10, PageID #: 891–2). Thus, Potts's first issue pertains only to whether the ALJ committed *legal error* by failing to adequately explain the consistency and supportability of the opinions in their persuasiveness analysis. (*Id.*). Indeed, "if the ALJ 'fails to follow agency rules and regulations' " an RFC determination lacks substantial evidence. *See Kinney*, 2024 WL 2273365, at *3. To the extent Potts is attempting to raise an issue regarding substantial evidence in addition to that of the legal requirement of 20 C.F.R. § 404.1520c, Potts fails to adequately raise this issue by failing to address it in anything other than a perfunctory manner. The Court considers any such argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

C&P exam for the claimant's left knee impairment. (*See* ECF No. 6, PageID #: 777–87, Tr. at 1F/489–99). In his conclusion, Dr. Stanley stated that Potts's left knee condition would result in Potts having "difficulty performing work involving prolonged walking/standing [but] he is able to do sedentary work" (*Id*. at PageID #: 786, Tr. at 1F/498).   The ALJ found Dr. Stanley's opinion not persuasive and explained:

> Dr. Stanley's statement about limited standing and walking does constitute a "medical opinion," but the statement for remaining ability for sedentary work is inherently neither valuable nor persuasive because it uses an undefined term or at best a term that would correlate to the functional ranges of exertional work that consists of a statement on a determination that is a reserved administrative finding to the Commissioner of Social Security and his designees (20 CFR 404.1520b(c)). Dr. Stanley's medical opinion for the claimant having difficulty with prolonged standing and walking is not persuasive because it is not supported by the mild degree of degenerative joint-space narrowing shown on x-rays of the left knee joint (which he expressly reviewed in preparation or the C&P Examination), by the claimant's conservative treatment via over-the-counter and prescription-strength anti-inflammatory medications, or by his own observed signs that, while evoking pain and mildly limited to 135 degrees, flexing the left knee did not have any associated crepitus or instability, the knee retained full 5/5 intrinsic muscle strength as with the unaffected right knee, and the claimant had no pain when actually bearing weight on the left leg (see Ex. 1F/490-493).  Supportability of Dr. Stanley's opinion for limited standing and walking is further strained by his own consideration of the claimant's report of working full time and being "on his feet a lot" as a photographer (Ex. 1F/489). Compounding these several areas of problematic supportability, Dr. Stanley's opinion is not consistent with the collateral medical evidence from the claimant's own primary care practitioners and other medical sources at the DVA, including clinically observed normal gait and normal station, full 5/5 strength in both lower extremities, and quite limited non-medication treatment pursued for knee pain over August 2016 through (and after) the date last insured in December 2020 beyond a singular corticosteroid injection and a very brief and beneficial course of physical therapy in April-June 2017 followed by self-managing pain with a TENS unit and home exercises.

(ECF No. 6, PageID #: 58–9).

Potts argues that the ALJ inappropriately second-guessed Dr. Stanley's opinion and failed to explain how the opinion was not supported or inconsistent with the record evidence in violation of 20 C.F.R. § 404.1520c. (ECF No. 7, PageID #: 874–75). The Commissioner argues that Potts asks this Court to reweigh the evidence and that the ALJ properly explained their

finding by citing to the overall record and Dr. Stanley's own records, which indicated that Potts was working fulltime as a photographer and "on his feet a lot." (ECF No. 9, PageID #: 889).

Here, the ALJ adequately explained their finding that Dr. Stanley's opinion was inconsistent with the record as a whole, including his own medical observations and was unsupported by the objective medical evidence. The ALJ explained that Dr. Stanley's standing/walking limitation was unsupported by and inconsistent with the records Dr. Stanley reviewed, which showed a mild degree of degenerative joint-space narrowing shown on x-rays of his left knee joint. (*Id*. at PageID #: 58). The ALJ explained that Dr. Stanley's standing/walking limitation was unsupported by and inconsistent with his own observations that Potts was mildly limited to 135 degrees of flexibility in his left knee and although he observed pain while manipulating the knee, Potts did not have any associated crepitus or instability and retained five-out-of-five intrinsic muscle strength. (*Id*. at PageID#: 58–9 (citing Ex. 1F/490–93). Moreover, the ALJ explained that Dr. Stanley observed no pain with weight bearing. (*Id*. at PageID#: 59). Thus, the ALJ's decision finding that Dr. Stanley's opinion was not persuasive is appropriate, as they found the opinion and the limitations therein to be inconsistent with the medical record, 20 C.F.R. § 1520c(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."), and they determined that Dr. Stanley's examination findings and the objective medical evidence did not support his conclusions regarding the severity of Potts's limitations. *Id*. § 1520c(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical finding(s)

will be.").

Potts's argument that the ALJ incorrectly second-guessed Dr. Stanley's opinion is merely an attempt to get this Court to reweigh the evidence, which the Court cannot do. "Our task is not to reweigh the evidence. That is solely the province of the Secretary." *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) (citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)); *see also Haun v. Comm'r of Soc. Sec.*, 107 Fed.Appx. 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm Judge Davis's decision because substantial evidence supports it.").

Here, the ALJ's explanation of the supportability and consistency of Dr. Stanley's opinion  complies with requirements of the regulation. Accordingly, Potts's second issue does not warrant remand.[6]

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Potts's Statement of Errors and AFFIRM the Commissioner's decision.

---

[6] Within his second assignment of error, Potts states, albeit without further argument, that the ALJ's reasoning for finding Dr. Stanley's opinion not persuasive is not supported by substantial evidence. (ECF No. 7, PageID #: 974 ("Here, the ALJ fails to comply with 20 C.F.R. § 404.1520c(b)(2), and the legal error is compounded by the fact that the ALJ's reasoning is not supported by substantial evidence. T 33.")). To the extent Potts is attempting to raise an issue regarding substantial evidence beyond that of the legal requirement of 20 C.F.R. § 404.1520c, Potts fails to adequately raise this issue on appeal by failing to address it in anything other than perfunctory manner. *See Kinney*, 2024 WL 2273365, at *3 (An RFC determination lacks substantial evidence "if the ALJ 'fails to follow agency rules and regulations[.]' ") (citation omitted). The Court considers any such argument waived. *McPherson*, 125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

Dated: November 4, 2024

s/ <i>Carmen E. Henderson</i>
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).