UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON M. POTTS, | ) | CASE NO. 5:24-cv-00882 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Before the Court is the Report and Recommendation submitted by Magistrate Judge Carmen E. Henderson ("R&R") recommending the Commissioner's decision be affirmed. (Doc. 11.) Plaintiff Jason M. Potts ("Potts") filed objections (Doc. 12), and Defendant Commissioner of Social Security ("Defendant") responded. (Doc. 13.)

For the following reasons, Potts's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner is AFFIRMED.

I. **BACKGROUND**

    A. **The Record Before the ALJ**

Potts does not object to the factual record and procedural history in the R&R. (*See* Doc. 12.) Notwithstanding, the Court summarizes the facts pertinent to Potts's objections as follows.

In his application for Disability Insurance Benefits ("DIB"), Potts complained of anxiety disorder, sleep impairment, depression, post-traumatic stress disorder, difficulty adapting to settings and circumstances, difficulty maintaining social relationships, disturbances in motivation and mood, short and long term memory issues, panic attack disorder, neglect of personal appearance and hygiene, obsessive compulsive behavior, attention span issues, suicidal ideation, paranoia, total occupational and social impairment, irritability with periods of violence,

hypertension, dermatitis, left knee problems, arthritis, and arthritis in his shoulder. (Doc. 11 at 897-98.)[1] Potts previously worked as a photographer but was no longer able to do so because of his anxiety. (*Id.* at 898-99.) Potts reported feelings of depression, guilt, and worthlessness and alternating periods of feeling drained and hyper-focused. (*Id.* at 899.)

Potts reported both mental and physical impairments in support of his alleged disability. (*Id.* at 899-900.) Only his physical impairments are at issue here. (*See id.*) Potts complained of degenerative disc disease in his left knee. (*Id.* at 900.) A 2009 MRI showed a torn ACL and a partially torn posterior ligament in Potts's left knee. (*Id.*) To treat these injuries, Potts received a corticosteroid injection in November 2016 and attended physical therapy between April and June 2017. (Doc. 6 at 40.) In May 2017, Potts received a transcutaneous electrical nerve stimulation unit to relieve his left knee pain. (*Id.*) At an August 2017 examination through the Department of Veteran's Affairs ("DVA"), Potts could flex his knee to 135 degrees, moved without crepitus or instability, and exhibited normal strength. (*Id.*) Taken together, this medical evidence was "largely unremarkable" and x-rays showed only a mild degree of degenerative joint disease ("DJD"). (*Id.*) At this examination, Dr. David Stanley concluded the injuries to Potts's left knee would create "difficulty performing work involving prolonged walking/standing," though Potts could still perform sedentary work. (Doc. 11 at 901.) Potts underwent surgery in June 2022 to repair these injuries. (*Id.* at 900.)

Two state agency physicians, Dr. Elizabeth Das and Dr. Abraham Mikalov, opined on Potts's physical limitations. (*Id.* at 900-01.) In May 2023, Dr. Das opined that given the pain caused by the degenerative changes in Potts's left knee, he could "occasionally lift and/or carry

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

2

twenty pounds and frequently lift and/or carry ten pounds; could stand and/or walk for six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb ramps/stairs, kneel, and crawl; and never climb ladders/ropes/scaffolds." (*Id.*) In June 2023, Dr. Mikalov reviewed Potts's records and concurred with Dr. Das's opinion. (*Id.* at 901.)

The ALJ found Potts had two severe impairments: post-traumatic stress disorder and persistent depressive order. (*Id.*) The ALJ found no severe physical impairments. (*Id.* at 902.) After Potts's surgical repair, the impairment on his left knee did not meet the definition of "severe." (*Id.*) The ALJ explained the "largely unremarkable objective medical evidence including mild degree of visible DJD of the knee per x-rays, conservative and limited treatment for the pain, and normal gait by clinicians' observations are not consistent with a musculoskeletal disorder that had caused more than minimal limitation[.]" (*Id.*) For Potts's residual functional capacity ("RFC"), the ALJ found Potts could perform

> a full range of work at all exertional levels but with the following non-exertional limitations: He could perform simple, routine, and repetitive tasks but not at a production-rate pace; he could have occasional interactions with supervisors and with coworkers, but could never interact with the public; and he could tolerate few changes in a routine work setting.

(*Id.* at 901-02.) In sum, the ALJ concluded Potts had not been under a disability as defined the Social Security Act during the relevant period. (Doc. 6 at 63.)

### B. Procedural History

On May 16, 2023, Potts filed a DIB application alleging a disability onset date of June 1, 2016. (Doc. 11 at 897.) The Commissioner denied the application initially and upon reconsideration. (*Id.* at 898.) Potts requested a hearing before an ALJ. (*Id.*) A hearing was held on December 14, 2023, where Potts was represented by counsel an impartial vocational expert testified. (*Id.*) On February 7, 2024, the ALJ issued a written decision finding Potts not disabled. (*Id.* (citing Doc. 6 at 38-67).) On April 15, 2024, the ALJ's decision became final.

3

On May 17, 2024, Potts commenced this action.  (Doc. 1.)  The parties then completed briefing.  (Docs. 7, 9, 10.)  On November 4, 2024, the Magistrate Judge issued her R&R recommending the Court affirm the Commissioner's final decision.  (Doc. 11.)  Potts timely objected.  (Doc. 12.)  Defendant responded on November 21, 2024.  (Doc. 13.)

## II.  **STANDARD OF REVIEW**

A district court "shall make a de novo determination of those portions or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C) (flush language); *see Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1, 1994 U.S. App. LEXIS 35044 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party.") (citations omitted). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (flush language).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A).  In making a disability determination, an ALJ engages in a five-step sequential evaluation:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.  To be severe, the claimant must

> have a severe medically determinable physical or mental impairment, or a combination of impairments, that must have lasted or be expected to last for at least 12 months, unless it is expected to result in death.
>
> 3. If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404, the claimant is presumed disabled without further inquiry.
>
> 4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 426 (6th Cir. 2018) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)).

During the first four steps, the claimant bears the burden of proof. *Walters*, 127 F.3d at 529. The "burden shifts to the Commissioner only at step five." *Id.*

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). If substantial evidence supports the Commissioner's finding that the claimant

is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The Commissioner's decision must be affirmed even if the claimant's position is also supported by substantial evidence. *Wallace v. Comm'r of Soc. Sec.*, 221 F.3d 1337 (Table), 2000 WL 799749, at *1, 2000 U.S. App. LEXIS 24244 (6th Cir. 2000) (citing *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).

### III. ANALYSIS

#### A. Potts's First Objection

Potts's first objection focuses on whether the ALJ properly explained how he considered the supportability and consistency of the medical opinions on the record. (*See* Doc. 12 at 919-20.) The R&R noted "the ALJ appears to conflate the terms 'supportability' and 'consistency'" but suggested the ALJ still performed the proper analysis. (*Id.* at 920.) To Potts, because the ALJ may have conflated these concepts, the ALJ applied the wrong legal standard. (*Id.*) Potts also argues the ALJ substituted his lay interpretation for Dr. Das and Dr. Mikalov's medical opinions. (*Id.*) Potts further asserts that the ALJ ignored evidence from Dr. Stanley showing difficulty standing for prolonged periods. (*Id.* at 920-21.)

To determine the persuasiveness of a medical opinion, an ALJ considers five factors. 20 C.F.R. § 404.1520c. Of these five factors, "the two most important are supportability and consistency." C.F.R. § 404.1520c(b)(1). In conducting this analysis, "an ALJ 'need not necessarily use the words "supportability" or "consistency," as long as the ALJ still performs the requisite analysis of these factors,' and a reviewing court is able to follow the ALJ's reasoning."

6

*Ford v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-524, 2023 WL 2088157, at *18 (N.D. Ohio Jan. 31, 2023) (quoting *Todd A. v. Kiljakazi*, No. 20-cv-594, 2021 WL 5348668, at *4-5 (E.D. Va. Nov. 16, 2021)). Moreover, an ALJ is not required to discuss each piece of data in the opinion so long as he or she "consider[s] the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 Fed. App'x 195, 199 (6th Cir. 2010).

Relevant case law makes clear that "supportability" and "consistency" are separate concepts. *See Reusel v. Comm'r of Soc. Sec.*, No. 20-cv-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021). Supportability refers to "how well a medical source's own objective findings and explanations support [its] own medical opinion." *Ford*, 2023 WL 2088157, at *17. Consistency, in contrast, refers to "how consistent a medical opinion is with the record evidence from other medical and nonmedical sources." *Id.* The more supported and more consistent a source is, the more persuasive it is. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ properly reviewed all three medical opinions for supportability. Starting with Dr. Das and Dr. Mikalov, the ALJ noted that an August 2016 x-ray did not support their opinions that Potts was limited in the way they described. (Doc. 6 at 46, 58.) The ALJ noted the x-ray showed only a "mild degree" of degenerative joint disease in Potts's left knee and was otherwise unremarkable. (*Id.*) The ALJ also noted that Potts was observed to have a normal gait, no pain in the knee, full muscle strength, no signs of instability, symmetric range of motion, and followed a conservative treatment plan. (*Id.*) Looking at this evidence, the ALJ reasonably found that the limitations in Dr. Das's opinion were not supported by objective medical evidence because they "exceed[ed] supportability." (*Id.* at 58.) Because no new evidence was added to the record between Dr. Das's opinion and Dr. Mikalov's review, the ALJ similarly concluded this medical opinion was not supported by objective medical evidence. At most, the ALJ found

these opinions could support "minimal functional limitations." (*Id.*)

For Dr. Stanley's medical opinion that Potts was limited in standing and walking, the ALJ explained that this opinion was "not supported by the mild degree of degenerative joint-space narrowing shown on x-rays" on his left knee, and his conservative treatment. (*Id.* at 58-59.) The ALJ also noted the "supportability of Dr. Stanley's opinion" was "further strained by his own consideration" of Potts's previous work as a photographer, which required him to consistently be on his feet for extended periods of time. (*Id.* at 59.) Therefore, the Court finds the ALJ properly assessed each medical opinion for supportability.

Moving to consistency, the ALJ noted Dr. Das and Dr. Mikalov's opinions were not "inconsistent *per se* with the expanded record." (*Id.* at 58.) For Dr. Stanley's opinion, the ALJ found it was "not consistent with the collateral medical evidence from [Potts's] own primary care practitioners and other medical sources at the DVA." (*Id.*) The ALJ addressed internal consistency between these opinions by acknowledging the state agency physicians "shared" opinions. (*Id.*) Similarly, by referencing consistency with the "expanded record," the ALJ recognized the consistency between Dr. Das and Dr. Mikalov's opinions and Dr. Stanley's opinion, which is part of the expanded record. Therefore, the ALJ addressed the consistency between the relevant medical opinions. The ALJ further evaluated consistency by comparing record evidence like x-rays and Potts's conservative treatment with the limitations discussed in the three medical opinions.

As for whether the ALJ impermissibly substituted his lay opinion for that of medical experts, Potts's objection is not well taken. The ALJ, not medical sources, has the final responsibility for determining a claimant's RFC. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical

8

opinion(s) or prior administrative medical finding(s), including those from your medical sources*."); see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff "contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong"). ALJs are not required to rely solely upon medical opinions when formulating an RFC. Instead, the regulations require ALJs to evaluate medical opinions based on their supportability, with reference to objective medical evidence and supporting explanations, and their consistency with other medical and non-medical source evidence. 20 C.F.R. § 1520c(c)(1)-(2). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 439 (6th Cir. 2010).

Potts argues the ALJ's imprecise language in evaluating supportability and consistency as separate concepts should bar affirmation of the Commissioner's decision. However, the record reflects that the ALJ properly weighed both supportability and consistency when evaluating the medical opinions and record evidence. The fact that the ALJ's discussions of supportability and consistency overlap in part, does not permit the Court to reweigh the evidence presented to the ALJ or substitute its own judgment for that of the ALJ. *See, e.g.*, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Potts's first objection is overruled.

### B. Potts's Second Objection

Potts's second objection argues that the ALJ found consistency between all three medical records, but did not adequately "explain why he found the opinions unpersuasive." (Doc. 12 at 921-22.) Without such an explanation, the recommendation that the Commissioner's ruling be affirmed is contrary to both the applicable regulations and Sixth Circuit precedent.

The ALJ explicitly discussed his reasons for finding each medical opinion not persuasive.

(*See* Doc. 6 at 58.) For the state agency physicians' opinions, the ALJ found "they are not well supported" by the evidence on the record. (*Id.*) For Dr. Stanley's opinion, the ALJ stated his opinion was "inherently neither valuable nor persuasive" due to its use of undefined terms and its lack of support from evidence on the record. (*Id.*) While it is true the ALJ noted the consistency of these three opinions, consistency is one of two important factors ALJ's must discuss in evaluating an opinion's persuasiveness. *See Kreilach v. Comm'r of Soc. Sec.*, 621 F.Supp.3d 836, 847 (N.D. Ohio 2022) ("The most important factors, which the ALJ must consider and articulate in his decision, are the supportability *and* consistency of the medical opinion in relation to the objective medical evidence.") (emphasis added); *see also* C.F.R. § 404.1520c(b)(1). Given the ALJ's finding that the medical opinions at issue were not supported by the evidence, the ALJ's determination that these opinions are not persuasive is justified. Potts's second objection is overruled.

### IV. CONCLUSION

For the reasons above, Plaintiff Jason M. Potts's objections are OVERRULED, the R&R is ACCEPTED and ADOPTED, and the final decision of the Commissioner of Social Security is AFFIRMED.

**IT IS SO ORDERED.**

Date: May 19, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE